Good afternoon. My name is Ken Snodgrass and I represent the City of Peoria to help in this case. This case involves the first issue that I want to address is the rebuttable presumption that is set forth in Section 6F of the Work Compact or Section 1D of the U.S. Compensation Act. The rebuttable presumption includes firefighters and it applies to the life accident date in front of you today of August 19, 2008. The rebuttable presumption applies to the petitioner Brian Grant. The rebuttable presumption involves the issue of arising out of the course of employment as well as cause of connection. Can I ask a question? If we agreed with you that they improperly relied on the rebuttable presumption as evidence of the injury, what would the proper remedy be? Well, I think we've asked for two things, Your Honor. One would be to remand it back to the Commission with direction as to the presumption and how it should be applied. The other argument would be if this Court wants to go additionally further, I think in way the evidence in light of the rebuttable presumption not being applied. Would it be appropriate for us to reweigh the evidence absent the presumption without giving the Commission an opportunity to do that first? Well, I think we asked for both of those items. I think the remand back to the Commission is if you decide that they improperly applied the presumption in this case, which I think is evident on the face of the decision of the Commission, then they should, if this Court deems it appropriate, yeah, they should have an opportunity. Wouldn't that be more preferable? Because after all, we review their decision. I understand. And I think, Judge, the other thing is that's exactly right. The case law says you're reviewing their decision. We're not substituting our judgment. I think that suggestion would do violence to the well-settled principle that we're not supposed to substitute our judgment to the Commission. Exactly. But I believe there's error on the face of the Commission decision as a matter of law. In this instance, that's the application of the presumption as to the rising out over the course of employment as well as causal connection. I don't think there's any disagreement by the parties. In fact, there's agreement by the parties that once the presumption is rebutted, it ceases to exist following the pronouncement of the Supreme Court decision of Diederick v. Walters. The Commission clearly does not follow that legal holding. I would like to just briefly cite the Commission's holding in this instance. The Commission finds that Petitioner may have been exposed to bad air during the occasions he did not use the SCBA, that self-contained breathing apparatus, and that pursuant to the presumption contained in Section 6F of the Work Compact, Section 1D of the Occupational Disease Act, and the medical causation opinions presented by Dr. Orris in the medical literature, Petitioner has proved both accident and causal connection by preponderance of the evidence. Once again, if the rebuttable presumption ceases to exist if it's rebutted, it has no bearing on either of those issues. So in other words, the presumption cannot be weighed on the scale with the other evidence. That's correct. They seem to imply here, pursuant to the presumption is where they went off the track, right? Pursuant to the presumption and using that and ruling on the merits of those two issues, Your Honor, yes. That's where they went off the track. Is there an innocent construction the opposing counsel might make of that phrase, do you think? I believe that if you look at the case law and what Dieterich has held, and if you look at the evidence here as to what was presented, the Commission even says in its decision, Your Honor, there was compelling medical evidence. And when you're considering that presumption issue, you should be looking at the evidence that was presented by, in this case, by the City of Peoria solely in terms of whether it's rebutted the presumption. And if we look at that evidence, we clearly see, I think, that it was rebutted. Not only as to rising out of the course of, but as to... Well, does it really have to be rebutted? Pardon? Well, according to Dieterich, it says as soon as evidence is presumed, which is contrary to the presumption, which arose before the contrary proof was offered, the presumption vanishes entirely. Yeah, it has no bearing, but if you look at the Commission... I'm sorry, Your Honor, I interrupted you. Yeah, go ahead. If you look at the Commission's decision, they're using the presumption, which if you find was clearly rebutted, in this case, as weighing the evidence, and that's not how it should be applied. Right, they put it on the scale when it shouldn't even have been on the scale to begin with. It shouldn't have been on the scale to begin with. It's a little ambiguous what the Commission says. I mean, they don't actually say we're weighing that as evidence, but they do say considering it. And I think that ambiguity is also carried forward if you look at the Circuit Court's decision in terms of how it tries to... The machinations it goes through and say, well, maybe the presumption wasn't rebutted on the rise and out of the course of the plaintiff, but it was rebutted on the causation side. And it has this really strange reading to do that. And I think that gets back to your point about the ambiguity of the... Wait a minute. What's ambiguous about pursuant to the presumption and the medical evidence, they have proved both accident and causal connection? What's ambiguous? Well, I was getting back to the Circuit Court's reading of that. We don't care about the Circuit Court. We care about the Commission. My position on the accident and rising out of the course of and on causation, if you look at the evidence, Your Honor, that was presented, it's clear that the presumption was rebutted. And I agree that the evidence clearly shows that. I was just commenting on the decision itself. And I think there's a reference back to earlier in the decision in the medical causation element of that. But if you look at the... And I'm not going to discuss the Circuit Court. If the Court doesn't deem us needed. But if you look at that, Circuit Court talks about the... And how they try to distinguish that. The decision clearly ignores the clear language of the Commission decision that was pointed out by Justice Hoffman. Attendant argument to this. And I think what the other side has argued, I know what they've argued, is that, well, maybe the presumption is for rising out of the course of wasn't rebutted. And I want to make this clear on the record. We never raised comparative fault for contributory negligence at any hearing or in any argument. What the self-contained breathing apparatus argument was raised for was directed at the exposure element regarding acts and rising out of the course of employment. That is something the Commission put in the decision. It's not something we argued in front of the arbitrator, nor did we argue it in front of the Commission. It does, however, go to the exposure aspect of it. So if we look at that, we know that he was provided with self-contained breathing apparatus since he was employed in 1990. It was used to protect him. It was available to Pistero at all times. Let's look at what his exposure history is by his own testimony. He estimated six structural fires per year, six dumpster fires per year, and eight to 12 car fires. He also talks about being around diesel fumes around the engine. He's been an engineer since 1999. He's manned a fire truck, and he would not necessarily be engaged in directly fighting fires. The Commission in its decision says, may have been exposed to, quote, bad air during the occasions he failed to use the self-contained breathing apparatus. In that, if you look at the fact he had a self-contained breathing apparatus that specially fitted to protect him from deleterious air. The only time he wasn't using that was when he was doing knockdowns, when he was standing around the engine. I think that goes to the exposure history that we're dealing with here, and the lack of exposure. You certainly have evidence that's contrary to his position, but what do you do with Dr. Orris' opinion? Dr. Orris is the only doctor who's given an opinion on behalf of the petition. And isn't that enough that the Commission believes him? The problem with Dr. Orris is his opinion is flawed in light of the literature, and in light of the literature he added. But that's not our job to decide. That's the Commission's job to decide. Well, my point is, if you look at Dr. Orris, and you look at his opinion in regards to this, Dr. Orris, he's not a kidney specialist. He's not a cancer specialist. He's not a real treater. It's all sorts of excuses that should be presented to the Commission to suggest to them why they shouldn't believe him. But if they do, what right do we have to decide contrary to that position? Well, the right we have is if the Commission, or in this case, and I'm going to change gears a little bit on it in terms of misapplied presumption. Oh, that's different. That's entirely different. If that were the case, the only thing that happens with this case is it goes back to the Commission with direction to decide this case without any consideration of the presumption. But that doesn't give us the right to go behind Orris' opinion. Well, I think at any time, Your Honor, you have the right to look at what the manifest weight of the evidence is. And in looking at that, you would have to look at Dr. Orris' opinion. But don't confuse credibility with manifest weight. I'm sorry? Don't confuse the Commission's assessment of the credibility of the witness with the manifest weight. I mean, they make the credibility. Well, it's not only credibility, but it still would go to the substance of his opinions. When you look at the book he edited, this book, this book he edited, and he was asked about this. And this was a publication, Firefighter Safety and Health, for which he recruited the authors and edited the chapters. And if you look, there's a chapter in that book called The Risk of Cancer in Firefighters. And there's a section in that chapter called Cancers of the Urinary System. And there's a subsection in that book, Kidney Cancer. And this is the book he edited. He got the authors. And when you read this section on kidney cancer, it says, this list clearly includes agents encountered in firefighting. However, the eight epidemiological studies that assessed kidney cancers in firefighters did not show consistently elevated risk. That's his book. That's what he edited. And this is in conjunction with the rest of the testimony, that 80 percent, in Eggner's opinion, 95 percent of all kidney cancers are idiopathic in nature. Did you impeach him with that? Yes, I did. That's in the record. But the commission knew that. And yet they still believed him. Well, my position is they shouldn't have believed him. Well, we understand your position is they shouldn't have believed him. But tell us why we can go behind that and find that it's against the manifest weight of the evidence. Because if you look, if this is remanded back to the commission in regards to this particular case, and the remand goes back with directions, and that the presumption doesn't apply. And if that presumption does not apply in their decision making, then Dr. Orris' opinion clearly, without the presumption being applied, has lost a lot of bearing and lost a lot of credibility. It really becomes the only evidence of causal connection. Yes. But the fact of the matter is, the commission may very well, when they subtract the presumption turnaround and say, we find no causal connection. They might. Because now there isn't enough. But I would also submit, if you say this is the only evidence of causal connection, even if we come back up here on a manifest weight of the evidence standard, that seems to me that it would even fulfill that standard. That the court could look at this and say, based on the manifest weight of the evidence standard, and it being applied, that this decision should not stand. Well, I get off in the realm of speculation. We don't need to decide that. If the presumption, if the matter is remanded, that's down the road. Correct. You can't ask for an advisory opinion as to what would happen. I'm not asking for an advisory opinion in terms of that, Your Honor. I'm just trying to address the weight to be given to Dr. Boris' opinion. But you're asking us to weigh a counsel. We don't weigh evidence. We determine whether evidence is against the manifest weight of the evidence. But we don't weigh it. Well, the question is, depending on what standard you apply, whether it's a de novo standard. How could we apply a de novo standard in the face of Boris' testimony? Well, you have the clearly erroneous standard, Your Honor. We don't apply clearly erroneous. Well, if you look at the Dodaro case. Dodaro is an unfortunate case that we have retreated from in every case that anyone has ever presented that argument in. We have specifically said the Supreme Court does not use the clearly erroneous standard on mixed questions of law and fact in workers' compensation cases. So you've got manifest weight. That's all you have. And you want us to re-weigh. No, I want the commission to properly weigh the evidence based on rebuttable presumption being defeated and look at the evidence anew. Because I believe in weighing that evidence, if they come up with a decision, we could be here in front of this court where the argument is, wait a minute, the only evidence that you have is Dr. Orris' opinion as to why this case should be found compensable if the city of Georgia wins that case. And if you look at that in light of the evidence that was presented by Dr. Eggner, the epidemiological studies that were performed, his testimony, the risk factors associated with this gentleman with obesity and with his hypertension, if it's remanded back and if the evidence is properly weighed anew without the rebuttable presumption, we may be here on a manifest weight of the evidence case where Mr. Grant is trying to make that argument as to why Dr. Orris' opinion should substantiate you reversing the decision. Because right now, you're right Justice Hoffman, Dr. Orris is it. Dr. Orris is it on this. There is nothing more. Thank you very much, I appreciate your time. You'll have time in the fall. May it please the court, counsel, good afternoon, my name is Tom Ewick, I represent the employee in this matter, Brian Grant, I'm here today to ask this petitioner to vacate this and send it back so they can decide this case without consideration of the presumption in their fact finding? Yes, because the commission found that the petitioner met his ultimate burden of persuasion. And as noted by counsel, and I agree, under Diederich, the way a rebuttable presumption works is it creates a prime facie case. And it's then up to the opposing party who it's offered against to present some evidence to rebut the presumption. And you don't contest that he did that, right? He presented some evidence, I disagree he rebutted it, but in this matter... I don't think Diederich suggests he has to rebut, he says he has to offer evidence that's contrary to it. Correct, and what the subsequent case of Franciscan Sisters kind of addresses the strength of the evidence needed to rebut the presumption, and counsel notes in his brief that it kind of implies there's no case law addressing the strength of the presumption. I would submit under that Franciscan Sisters case, there's a notation in there that if it's a strong presumption, then there must be great evidence. That case said clear and convincing evidence must come forward to rebut it. In this case, we're dealing with rebuttable presumptions in Section 1B that says shall be a rebuttable presumption, and I would argue the word shall means it is a strong presumption here, and they do have to present great evidence to rebut it. The language from Diederich is that once it is rebutted, it doesn't shift the burden of proof or the burden of persuasion. The burden of proof never shifts. Correct, I agree. If it is not rebutted, the party who gets the benefit of it wins the case as a matter of law, and there's no need to consider the other options. Diederich doesn't say rebut it. Diederich only says introduces evidence contrary to the presumption. At that point in time, the presumption falls. The burden of proof always remains with the plaintiff or, in this case, the claimant. Correct, and to answer your question, in this case, the reason this Court should not remand it is because in this case, the Commission held, specifically held, that the petitioner or the employee met his burden of persuasion. Well, let's try it again. The Commission finds that the claimant may have been exposed to bad air during the occasions he did not use the SCBA and that, and I'm quoting, pursuant to the presumption contained, they list the statute, the Occupational Disease Act, and the medical causation opinions presented by Dr. Orris and medical literature, the claimant has proved both accident and causation. There is no question they relied on the presumption to satisfy your burden of proof, and the presumption can never be used for that if there is evidence in opposition to it, and certainly Dr. Eggener provided evidence in opposition. I agree with you that the presumption cannot be used as evidence on the scale of that and determining whether I met my burden of persuasion. Well, why do they even cite it? Okay, continuing on with what you said about the presumption. Hang on a second. Diederick says, as soon as the evidence is presented, which is contrary to the presumption, which arose before the contrary proof was offered, the presumption vanishes entirely. They go on to say that once that happens, it's as though it never existed. Why would the commission cite a presumption that no longer exists? How can you say they didn't consider it for any purpose? They're not supposed to consider it for any purpose once it vanishes. Why cite it if they didn't consider it? There's two presumptions within Section 1D. There's a presumption to accident and there's a presumption to causation. In this case, the arbitrator's decision broke up accident and broke up causation. The accident discussion and the arbitrator's decision is all about self-contained breathing apparatuses. Whether he could have worn them in the bad air he was exposed to because he wasn't wearing them. Then you have the causation section of the arbitrator's decision, which discussed the medical testimony. In this case, in reading the context of the sentence, the commission is saying we disagree with the arbitrator. It's then going on to say, it talks about the SCBA, the self-contained breathing apparatuses. And this sentence could have been with all due respect to the commission, made more artfully phrased. But a reasonable interpretation of this sentence is that it's saying when this is your attempt to rebut the accident presumption, the fact that he wasn't wearing a self-contained breathing apparatus, we don't find that presumption was rebutted. So pursuant to that presumption, and they didn't say presumptions in this sentence, it says presumption. So an interpretation of this sentence is the commission is saying pursuant to the accident presumption, given your evidence in an attempt to rebut it was the self-contained breathing apparatuses or the issue of that, pursuant to that, we find accident. But what are you going to do with this? And I'm going to ask you a very pointed question. If we find that we can't tell, based on this language, given your argument that the commission did not consider the presumption, what's going to happen if we can't tell? You're going to remand the case to the commission. They're going to ask us to write briefs. I'm going to explain, we're going to give them copies of Diederich and the Franciscan Sisters case. They already have that, counsel. They've got a record. And second of all, your argument that they're only applying it to accident is just disingenuous, if you read the quote. Because they talk about it in the conjunction. There's an and in there. That pursuant to the privilege has proven both accident and causation. They relied on this presumption for both accident and causation. So, I mean, you've got to be genuine with us in the interpretation of what happens here. Now, there are two arguments to be made. Number one, either they didn't rely on it, or in the alternative, they did. And now the question becomes, would we send it back with directions not to consider the presumption and decide the case on the other evidence in the record, however that comes out? Or in the alternative, your opponent says, we should decide it. We should decide that Boris' testimony is just, you know, his opinions are against the manifest weight of the evidence, and we should not only find that they wrongly relied on the presumption, we should reverse them and say it's against the manifest weight of the evidence. But I don't think you can make a strong argument that they didn't rely on it. They say they did. They reference it, and if they did, I think it was they reference it, and I'm not sure, quite frankly, that it warrants reversal, especially if you're going to adopt counsel's second argument as far as the remedies here in that this Court should consider this case on the manifest weight of the evidence instead of remanding it. First, the city of Peoria argues they know the standard, then they argue clearly erroneous. I did not find one single court decision addressing a workers' compensation case issue under the clearly erroneous standard. You didn't read Dodaro, because Dodaro did. We just retreated from Dodaro every time we got the issue after. But Dodaro, he's correct, Dodaro applied. Well, I mean, let's start from this position. It's not a de novo standard, and it's not the clearly erroneous standard. It is the manifest weight of the evidence standard. Then the Commission's decision was not against the manifest weight of the evidence here. It is, as Your Honor is well aware, not this Court's responsibility to do this, but we already did it once with the Commission. So when counsel talks about the number of fires that Mr. Grant was attending to on average during the course of 18 or 19 years, what is being left out is his expert didn't rely upon that. His expert had every opportunity to meet with my client, to meet with Mr. Grant, to ask him about the number of fires. He had every opportunity to review the city's fire statistics, but he didn't. He just based his decision or his opinion on it, his overall belief that there's no automatic or scientific link between firefighting and kidney cancer. Dr. Orris, on the other hand, did consider the amount of fires that Mr. Grant was exposed to on a year, and he did. So to say, to argue that the amount was limited calls for speculation when the city's own expert had every opportunity to rely upon those, but didn't. The other problem, the major problem I have with Dr. Eggener's opinions is that he cites two selective portions of studies and leaves out others. For instance, the Exhibit No. 6 introduced at trial is introduced because the author's statement that there's no there's no scientific links between occupational exposure and kidney cancer. The other three studies he relies upon for general statements going to someone's obesity or to their blood pressure. They also state there may not, there's no scientific links between occupational exposure, anything linking up firefighting and kidney cancer. He fails to mention the statements in those articles linking up asbestos to kidney cancer, and the city's expert, or the city's only witness at trial, Chief Tomlin, acknowledged firefighters encountered asbestos. So I would be more than happy to re-weigh the evidence with this court. It's just not this court's responsibility to do that. The commission considered this evidence, went through it, and found that the petitioner, in this case, or the employee met his burden of persuasion. And finally, I do want to point out one or two things here. The argument that is made about self-contained breathing apparatuses, that it was not offered to allege Mr. Grant was engaged in contributory negligence or comparative fault. It was made at trial and it was used by the arbitrator, although those words may not have been used, comparative negligence or comparative fault. The evidence was introduced that these self-contained breathing apparatuses were available. But the testimony established that it's common practice for firefighters not to wear them after the fire is extinguished when they're going through the overhauls, even though, as Dr. Orris, Mr. Grant's expert, testified, that's the time where a fire is extinguished from the smoke. Dr. Orris, in conclusion, testified he relied upon his knowledge of the chemicals that firefighters were exposed to, he relied upon the amount of fires Mr. Grant attended to each year, and he relied upon the latency period of nearly 20 years. Dr. Eckener, on the other hand, bases his opinion on an overall belief that there is no automatic link between firefighting and kidney cancer, but as is for as well as where scientific proof is not required. It's sufficient if an expert testifies that the work exposure might or could have caused an injury. And to the extent that the City of Peoria relies upon a book edited by Dr. Orris, Orris was not impeached with that testimony, or said he disagreed with that author's statement, even though it was in the book he edited. He edited the book, he did typical editing duties, but during his cross-examination he said the sentence was being either taken out of context or misread. I would ask this Court to affirm. Thank you. Thank you, Counselor. Counselor, you may reply. I think the language is clear under the Commission decisions they considered the rebuttable presumption when they laid the evidence, as has been pointed out by this Court. I think that if we're going to give the Commission the opportunity to make a whole different spin on how that evidence is weighed and what the ultimate decision might be based on that evidence. I would further submit that the cases that the Dietrich case clearly stands for what happens when the presumption is rebutted. We never argued comparative negligence at any time. You can't say it wasn't cited by the arbitrator. It was for the exposure purposes. And if you take the presumption arising out of the course of and you take it out of the medical causation element of this, this case has a whole new light shone on it. And I would submit that ultimately a different decision could have been rendered. I won't go into the studies, but I will just mention Dr. Eggert talked about the study of risk of kidney cancer tumors in firemen, that there's references to that in our brief. I would just note that Dr. Horace's epidemiological studies I referenced in his book are some of the same studies that this publication reviewed and ultimately concluded in its language that there is limited evidence that exposure entailed as a fireman increased the risk of kidney cancer. The evidence is limited, not sufficient because of the lack of good exposure assessment in almost all studies. There is not a more likely than not probability that a kidney cancer in a fireman is the result of exposures encountered in this occupation. This publication was marked in 2005. I believe Dr. Eggert's was October to December of 1995 when you look at that. So I would submit that that is consistent and actually consistent with Dr. Eggert's own book, excuse me, Dr. Horace's own book that he edited. I would submit that I think ultimately the case should go back to the commission and it should be decided with instructions from this court. Thank you for your time today. Thank you counsel, both of your arguments in this matter will be taken under advisement.